UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CIERA WASHINGTON and                                    Civil Action No.: <u>11 civ</u> 8829
ELEANA LEIVA

                                              Plaintiffs,

                  -against-

PAY-O-MATIC CHECK CASHING CORP., and jointly          **COMPLAINT**
and individually, KEN WILLIAMS, REGAN
RAMSUMAIR and HILDA ORTIZ                              JURY TRIAL DEMANDED

                                        Defendants.
-----------------------------------------------------------------X


      Plaintiffs, CIERA WASHINGTON and ELEANA LEIVA (collectively, "Plaintiffs"), by and through their attorney, the LAW OFFICE OF LAURIE E. MORRISON, file this Complaint against Defendants, PAY-O-MATIC CHECK CASHING CORP., KEN WILLIAMS, REGAN RAMSUMAIR and HILDA ORTIZ (collectively, "Defendants"), charging upon information and belief as follows:


### NATURE OF THE ACTION AND THE PARTIES

    1.  This is a case about two Black employees who were subjected to repeated and pervasive discrimination, harassment and retaliation by their supervisors and co-workers because of their race and color, and because of one employee's actual and perceived disability. The supervisors then unlawfully disciplined both employees and wrongfully terminated one of them in retaliation for their lawful complaints.

    2.  Plaintiffs' claims include unlawful discrimination, harassment, hostile work environment, retaliation and failure to promote and to pay proper wage and overtime

1

compensation on the basis of race, color, and actual and perceived disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), the New York State Human Rights Law, N.Y. Exec. L. §290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"), respectively.

3.   Plaintiffs' claims also include unlawful failure to pay proper wages and overtime compensation in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and the New York Labor Law, N.Y. Lab Law § 650 et seq. ("NY Lab Law").

4.   This action is against: (a) Pay-O-Matic check cashing corp. (hereinafter, "Pay-O-Matic" or the "Company"); (b) Ken Williams, vice president of Pay-O-Matic (hereinafter, "Williams"); (c) Regan Ramsumair, Plaintiffs' direct supervisor (hereinafter, "Ramsumair"); and (d) Hilda Ortiz, Plaintiffs' direct supervisor (hereinafter, "Ortiz") (collectively, "Defendants").

5.   Plaintiff, Ciera Washington, is a person who resides in the Bronx, New York and is a resident of the State of New York.

6.   Plaintiff, Eleana Leiva, is a person who resides in the Bronx, New York and is a resident of the State of New York.

7.   Upon information and belief, Defendant Pay-O-Matic is an entity with an address in the Bronx, New York, and with several other store locations throughout the New York City area.

8.   Upon information and belief, Defendant Williams is a person who resides in the Bronx, New York.

9. Upon information and belief, Defendant Ramsumair is a person who resides in the Bronx, New York.

10. Upon information and belief, Defendant Ortiz is a person who resides in the Bronx, New York.

11. Upon information and belief, at all times material, Defendant Pay-O-Matic is and was an entity duly existing under the laws of the State of New York.

12. Plaintiffs seek to hold Defendants individually, jointly and severally liable under various legal doctrines, including without limitation vicarious liability, strict liability, respondeat superior, aiding and abetting liability and/or other grounds.


## JURISDICTION AND VENUE

13. The Court has jurisdiction over Plaintiffs' claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., to the FLSA, 29 U.S.C. § 201 et seq., including 29 U.S.C. § 216(b), and supplemental jurisdiction thereto.

14. This action involves Questions of Federal Law.

15. Venue is proper in this district based upon the fact that Defendant Pay-O-Matic's principal places of business is located in the Bronx, New York within the Southern District of the State of New York, that Plaintiffs' are residents of the Bronx, New York, and that a substantial part of the events or omissions giving rise to the herein claims occurred in the Bronx, New York, within this district. 28 U.S.C. §1391(b).

16. On or around August 12, 2011, Plaintiffs filed charges of discrimination, harassment, retaliation, unequal pay, and failure to promote (the "Charges") with the

United States Equal Employment Opportunity Commission ("EEOC"), and the Charges were dual filed with the New York State Division of Human Rights ("NYSDHR").

17. Upon request, Plaintiffs received Notice of Right To Sue Letters, both dated September 20, 2011.

18. This action is being brought within 90 days of the said Notice Of Right To Sue Letters.

19. Plaintiffs have satisfied all of the statutory prerequisites to filing this action with this Court.

20. Plaintiffs seek an award of appropriate relief.

## RELEVANT FACTS

21. Defendant Pay-O-Matic provides check cashing services to customers, whereby customers submit their checks to Pay-O-Matic tellers and those tellers exchange the checks for cash, minus Pay-O-Matic's fee for the services.

**Ciera Washington**

22. Ms. Washington is an African-American woman who was hired by Defendants on June 6, 2008, to work as a teller.

23. Ms. Washington is still employed by Defendants.

24. Ms. Washington also has brain cysts for which she had several surgeries to alleviate and received temporary sick leaves of absence from the Company. Ms. Washington's disability has not interfered with her ability to perform effectively at work,

but it has interfered with some of her daily life activities, such as walking, thinking and sleeping.

25. Defendants were aware of Ms. Washington' disability, as Ms. Washington gave Defendants doctors' notes that detailed her condition and otherwise alerted Defendants to it.

26. Throughout Ms. Washington's employment with Defendants, she has been subjected to systematic and continuing discrimination by Company executives and supervisors, including by Defendants Ken Williams, Vice President of Pay-O-Matic, Defendant supervisors Regan Ramsumair and Hilda Ortiz, and by Company employees because of Ms. Washington's race and actual and perceived disability.

27. For example, Ms. Washington's workplace performance was consistently excellent and she was ranked Number Two of all employees in the Bronx, New York District for selling debt cards – yet Ms. Washington has been paid less than other non-African-American, light-skinned, non-disabled employees with less impressive performance records and experience than her.

28. Ms. Washington has also not received a pay raise for the entire three and a half years that she has worked for the Company.  Other non-African, light-skinned Americans without disabilities have received pay raises and/or earn higher wages than Ms. Washington for comparative work or lesser work duties than Ms. Washington.

29. Ms. Washington also worked more than forty hours per week (i.e., overtime hours) on several occasions, but was not paid overtime compensation/time-and-a-half for each hour worked over 40 per week. Upon information and belief, other non-African-

American employees without disabilities were properly compensated for their overtime work.

30. Ms. Washington also applied for several positions with the Company that she was more than qualified for, but she was denied in favor of less qualified, non-disabled, non-African-Americans.

31. For example, on or around December, 2010, Ms. Washington applied for a position that involved her training new tellers in the Company.  Ms. Washington was highly qualified for the position, as Defendants had already assigned her to train several new hires since she first started working with the Company.  Still, Defendants Pay-O-Matic and Ken Williams refused to allow Ms. Washington to even interview for the position.

32. Instead, Defendants gave the position to a non-African-American, non-disabled teller who had less experience in the position and less tenure than Ms. Washington.

33. Defendants continued to make Ms. Washington train new tellers, but they refused to give her the job title and compensation commensurate with those additional workplace duties.  In other words, Ms. Washington was forced to take on additional managerial duties without receiving the proper pay or job title that non-African-American, light-skinned, non-disabled employees received who performed similar duties.

34. Ms. Washington was again denied a management position on or around April 25, 2011 in one of the Company's stores in Mamaroneck, New York.

35. Defendant Williams interviewed Ms. Washington for the position, but never bothered to discuss work-related subjects during the interview.  Instead, Mr. Williams

questioned whether Ms. Washington would fit in with the Mamaroneck store, claiming that it was **"not the ghetto"** like the Bronx, New York store.

36. Upon information and belief, Defendant Williams' comment was intended to be a slur against Plaintiff's race, and Plaintiff was very offended by the comment.

37. Mr. Williams also questioned whether Ms. Washington could perform the management position due to her actual and perceived disability. Throughout the interview, Mr. Williams scrutinized Ms. Washington's physical and mental capabilities and directed most of his questions to concerns regarding her brain cysts, even though Ms. Washington was more than qualified for and capable of effectively performing the position with or without an accommodation.

38. Defendants Williams and Ortiz subsequently hired a non-African-American, non-disabled employee for the position who had worked for the Company for only 6 months (compared to Ms. Washington's almost three years with the Company) and who was further unqualified for the position because she lacked the required college credits to be a manager, per Company policy.

39. Ms. Washington applied for two other positions around May, 2011, but Defendants did not allow her to interview for the jobs.

40. Ms. Washington was also excluded from workplace activities and subjected to racial slurs and comments by supervisors and employees.

41. For example, employees were ordering lunch one day, and an employee commented that Ms. Washington only **"wants fried chicken and collard greens"**. Upon information and belief, the employee was referring to a racist stereotype about African-Americans' eating habits.

42. Company supervisors were present when the offensive comment was made, but instead of addressing and resolving the situation -- they laughed along with the other non-African-American employees, further humiliating Ms. Washington.

43. Ms. Washington complained several times about the racist comments made against her and about the Company's refusal to promote and pay her appropriately.

44. Ms. Washington also complained several times about the racist comments and behavior regularly directed against other African-American and dark-skinned employees in the Company, including Plaintiff Eleana Leiva.

45. By June, 2011, Ms. Washington had already begun the process of filing her EEOC Charge for discrimination, harassment, retaliation, failure to promote, and improper wage and overtime compensation and benefits.  Ms. Washington had also hired an attorney to represent her.  Ms. Washington notified Defendants that she was planning to file a formal complaint in court.

46. Defendants failed to resolve or even address Ms. Washington's complaints. Instead, Defendants retaliated against Ms. Washington for her complaints and impending legal action by exacerbating their harassment and abuse.

47. On one occasion, Defendant supervisor Regan Ramsumair inappropriately accused Ms. Washington of cyber-bullying employees without presenting even one iota of evidence to support his allegations. Upon information and belief, Defendants were attempting to use these false charges to unlawfully terminate Ms. Washington's employment.

48. Defendants also suspended Ms. Washington on June 29, 2011 without providing her a reason for the suspension. Defendant Ramsumair later revealed that Ms. Washingon

was suspended for allegedly using the Company bathroom while she was off-duty. However, other non-African-American, non-disabled employees had been consistently allowed to use Company facilities off-duty with impunity.

49. Despite Ms. Washington's complaints and requests to return to work, Defendants refused to reinstate her employment and refused to give her details regarding her suspension and expected return to work date.   Defendants finally allowed Ms. Washington to return to work once they received a call from Ms. Washington's attorney, requesting details regarding her unlawful suspension.

50. On July 21, 2011 Defendant Ramsumair tried to demote Ms. Washington by forcing her to work as a "swing teller" in the Company's Gun Hill Road store in the Bronx, New York.  The "swing teller" position was a demotion because, at that time, Ms. Washington had been the second person in charge at her workplace after the store manager, but the "swing teller" position was significantly lower on the workplace position hierarchy. The "swing teller" position also involved working unpredictable shifts and work hours.

51. Defendants would also force Ms. Washington to work alone if the other scheduled tellers were unable to come to work due to sickness or other reasons.  Defendants failed to call in replacement tellers to work those shifts with Ms. Washington, which denied Ms. Washington proper meal and bathroom breaks because she was not allowed to leave her post.

52. Defendants, however, made sure to provide their non-African-American, light-skinned, non-disabled tellers with proper assistance when other tellers could not attend their scheduled shifts.  Defendants would even make Ms. Washington leave her store to

9

assist those tellers in other stores, so they could have those proper meal and bathroom breaks that Defendants effectively denied to Ms. Washington.

53. Defendants' misconduct caused Ms. Washington severe emotional stress that resulted in severe headaches and exacerbated her disability.

**Eleana Leiva**

54. Plaintiff Eleana Leiva, is a dark-skinned Hispanic woman who was hired by Defendants on or around February 10, 2011, to work as a teller.

55. During Ms. Leiva's employment with Defendants, she was subjected to systematic and continuing discrimination by Defendant supervisors Ramsumair and Ortiz, and by Company employees because of Ms. Leiva's racial color.

56. For example, when Ms. Leiva was first hired by Defendant Pay-O-Matic, Defendant supervisor Ortiz denied Ms. Leiva's request to work the morning shift.  Ms. Leiva requested the shift so she could care for her children in the afternoon after they returned home from school. Soon after rejecting Ms. Leiva's request, Defendant Ortiz gave the morning shift to a light-skinned/White employee who had been hired after Ms. Leiva and who had less experience with the Company that she did.

57. Ms. Leiva was also subjected to racial slurs and comments by supervisors and employees, including frequently being called **"Morena"** or **"Black Girl"** in Spanish by Defendant Ortiz when Ms. Ortiz spoke to other Spanish-speaking employees.

58. Ms. Leiva also applied for a better position with the Company, but, similar to Ms. Washington's experioence – the Company gave the position to a light-skinned/White employee who was not as qualified as Ms. Leiva.

59. Upon information and belief, Defendants also failed to compensate Ms. Leiva for work performed and for paid time off ("PTO") days.

60. Ms. Leiva complained several times about the discrimination, harassment, and wage and benefits underpayments against her and other dark-skinned and African-American employees.

61. By June, 2011, Ms. Leiva had already begun the process of filing her EEOC Charge for discrimination, harassment, retaliation, failure to promote, and improper wage and overtime compensation and benefits.  Ms. Washington had also hired an attorney to represent her.  Ms. Leiva notified Defendants that she was planning to file a formal complaint in court.

62. Defendant supervisor Regan Ramsumair was also aware of the abuse against Ms. Leiva, but did nothing to address or resolve it.

63. Defendants instead retaliated against Ms. Leiva for her complaints and impending legal action.  After Ms. Leiva complained about the preferential treatment given to non-African-American, light-skinned/White employees, Defendants intensified their harassment and abuse against her.

64. On or around April/May, 2011, Defendant Ortiz refused to let Ms. Leiva leave work to tend to a family emergency involving Ms. Leiva's son, even though other light-skinned/White employees were regularly allowed to leave work for less critical personal matters.

65. Defendants also refused to reimburse Ms. Leiva for her transportation to work and between Company offices, even though Company policy provided for such

reimbursement and other light-skinned/White employees routinely received such reimbursement.

66. Defendants also suspended Ms. Leiva and subsequently terminated her employment for alleged conduct that was permitted according to Defendants' employee manual and that other light-skinned/White employees were routinely allowed to do with impunity.

67. Specifically, Company policy provided for an "Open Till", meaning that employees were allowed to remove cash from the Company drawers with supervisor approval. Employees were also allowed to remove cash from Company drawers to pay for transportation (i.e., taxi-cab rides) to and from work and between Company stores.

68. On or around June 20, 2011, Ms. Leiva asked manager Crystal Ramos if she could remove $10 from the cash drawer to pay for her taxi-cab ride from home to work, as other light-skinned/White employees were frequently allowed to do. Ms. Ramos granted Ms. Leiva's request, so Ms. Leiva removed $10 from her drawer.

69. Defendants later instructed Ms. Leiva to sign a document stating that she had removed the $10 for their file. Defendants intentionally deceived Ms. Leiva into signing the document by stating that she had no choice but to sign it and by stating that she would not be fired for doing so. Ms. Leiva signed the document as Defendants requested, and Defendants promptly used it further retaliate against her.

70. Defendants subsequently terminated Ms. Leiva's employment for receiving the $10 – even though the conduct was allowed according to Company policy, it had been approved by Ms. Leiva's manager, and light-skinned/White employees routinely did similar behavior with impunity.

71. Defendants also wrongfully accused Ms. Leiva of stealing, claiming that her drawer had been "short" by $105, meaning that $105 had been missing from the drawer. Defendants immediately blamed Ms. Leiva for the missing money and terminated her employment, even though other light-skinned/White employees had been "short" several times by hundreds of dollars, but had not received even a minor disciplinary action, much less a termination of their employment.

72. There are currently no African-American or dark-skinned managers in the Bronx, New York store where Ms. Washington and Ms. Leiva worked. There had been one African-American supervisor in the office, but, upon information and belief -- Defendants demoted her when she became disabled with nerve damage in her legs.  Upon information and belief, the previous African-American supervisor's disability had not hindered her ability to effectively perform her managerial duties, but it was a motivating factor of her demotion.

73. Defendants then replaced the African-American supervisor with a non-African-American, non-disabled employee who had less tenure and was less qualified for the position than Ms. Washington.


### AS FOR THE FIRST CAUSE OF ACTION
### FOR DISCRIMINATION, HARASMENT AND HOSTILE WORK ENVIRONMENT UNDER TITLE VII
### (Against Defendant Pay-O-Matic, Not Against the Individual Defendants Williams, Ramsumair and Ortiz)

74. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

75. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendants.

76. Plaintiffs complain of Defendant Pay-O-Matic's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon their race, color and actual and perceived disability status.

77. Defendant Pay-O-Matic is an employer within the meaning of Title VII.

78. At all relevant times, Plaintiff Ciera Washington was and is African-American, and was disabled, regarded as disabled and/or had a record of disability within the meaning of Title VII.

79. At all relevant times, Plaintiff Ciera Washington had brain cysts for which she had several surgeries to alleviate her condition.  Ms. Washington's disability did not interfere with her ability to perform effectively at work, but it has interfered with some of her daily life activities, such as walking and sleeping.

80. Defendants were aware of Ms. Washington' disability.

81. At all relevant times, Plaintiff Eleana Leiva was and is a dark-skinned American within the meaning of Title VII.

82. At all relevant times, Defendants were aware of Plaintiffs' race, color and disability status.

83. Defendants engaged in unlawful employment practices prohibited by Title VII with behaviors including, but not limited to, repeatedly using or allowing others to use racist slurs and comments against Ms. Washington, denying Ms. Washington compensation and job promotions that she was entitled to receive, attempting to demote

Ms. Washington without lawful justification, suspending Ms. Washington's employment without lawful justification, and attempting to unlawfully terminate Ms. Washington's employment. Upon information and belief, Defendants' misconduct was the result of discrimination, harassment and retaliation against Ms. Washington's race, color and actual and perceived disability status.

84. Defendants also failed to pay Ms.Washington proper wages for the work she performed, including failing to provide her the hourly rate and pay raises that other non-African-American, non-disabled employees received, and failing to compensate her for the training of tellers and other additional duties she performed.  Upon information and belief, Defendants' misconduct was the result of discrimination, harassment and retaliation against Ms. Washington's race, color and actual and perceived disability status.

85. Defendants further engaged in unlawful employment practices prohibited by Title VII with behaviors including, but not limited to, repeatedly using or allowing others to use racist slurs and comments against Ms. Leiva, denying Ms. Leiva work shifts, compensation and job promotions that she was entitled to receive, and unlawfully terminating Ms. Leiva's employment. Upon information and belief, Defendants' misconduct was the result of discrimination, harassment and retaliation against Ms. Leiva's racial color.

86. Defendants' unlawful employment practices were severe or pervasive as to create a hostile work environment.  Defendants' unlawful conduct also negatively affected Plaintiffs' terms and conditions of employment, including affecting their job status, compensation and benefits.

87. Defendants' conduct was so severe or pervasive that a reasonable person in Plaintiffs' positions would find that Plaintiffs' work environment was hostile or abusive.

88. Plaintiffs were highly offended by Defendants' conduct and reasonably believed that their work environment was hostile or abusive as a result of Defendants' conduct.

89. Defendants discrimination, harassment and retaliation further significantly affected the terms and conditions of Plaintiffs' employment, including causing Ms. Washington to not receive the compensation and job promotions that was entitled to and more than qualified for, causing Ms. Leiva to not receive the workplace shifts and job positions that she was entitled to, and subjecting Plaintiffs to unlawful, false disciplinary measures including suspension and termination of employment.

90. Upon information and belief, each and every Defendant contributed to the harassment, hostile work environment and retaliation, was aware of the harassment, hostile work environment and retaliation against Plaintiffs and did nothing to resolve it and/or was complicit in the misconduct.

91. Upon information and belief, Defendants' discrimination and harassment was intentional, intended to harm Plaintiffs, and was done with malice or reckless indifference to Plaintiffs federally protected rights.

92. As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiffs have suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiffs have also suffered future pecuniary losses, attorneys' fees and costs, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

93. As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiffs have suffered and will continue to suffer, among other items, impairment and damage to their good name and reputation, physical pain, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.

94. As Defendants' conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiffs also demand punitive damages in an amount which exceeds the Jurisdictional limits of all Lower Courts.

95. Plaintiffs' damages include financial loss, loss of employment and employment benefits, damage to their careers and professional reputations, and severe emotional distress caused by the degrading conduct and loss of employment.

96. Plaintiffs are entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, reasonable attorney's fees and compensatory damages from Defendant Pay-O-Matic under Title VII.

### AS FOR THE SECOND CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE VII
### (Against Defendant Pay-O-Matic,
### Not Against the Individual Defendants Williams, Ramsumair and Ortiz)

97. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

98. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendants.

99. Plaintiffs complain of Defendant Pay-O-Matic's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon their race, color and actual and perceived disability status.

100.     Defendant Pay-O-Matic is an employer within the meaning of Title VII.

101.     At all relevant times, Plaintiffs were employees within the meaning of Title VII.

102.     At all relevant times, Plaintiff Ciera Washington was and is African-American, and was disabled, regarded as disabled and/or had a record of disability within the meaning of Title VII.

103.     At all relevant times, Plaintiff Eleana Leiva was and is a dark-skinned American within the meaning of Title VII.

104.     At all relevant times, Defendants were aware of Plaintiffs' race, color and disability status

105.     Defendants engaged in unlawful employment practices prohibited by Title VII by harassing, discriminating and retaliating against Plaintiff Ciera Washington because of her race, color and actual and perceived disability status.

106.     Defendants engaged in unlawful employment practices prohibited by Title VII by harassing, discriminating and retaliating against Plaintiff Eleana Leiva because of her racial color.

107.     Defendants' unlawful employment practices were severe or pervasive, negatively affected Plaintiffs' terms and conditions of employment, and created a hostile work environment.

108.     Plaintiffs complained about Defendants' unlawful discrimination and harassment.

109.     Defendants retaliated against Plaintiffs' complaints by intensifying their discrimination and harassment, unlawfully disciplining Plaintiffs, and terminating Plaintiff Eleana Leiva's employment.

110.     Upon information and belief, each and every Defendant contributed to the discrimination, harassment and retaliation, was aware of the discrimination, harassment and retaliation against Plaintiffs and did nothing to resolve it and/or was complicit in the misconduct.

111.     Defendants' conduct, as alleged herein, also constitutes unlawful retaliation on the basis of Plaintiffs' race, color and actual and perceive disability status, as defined by Title VII, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of Title VII.

112.     Plaintiffs' damages include financial loss, loss of employment and employment benefits, damage to their careers and professional reputations, and severe emotional distress caused by the degrading conduct and loss of employment.

113.     As Defendants' conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiffs also demand punitive damages in an amount which exceeds the Jurisdictional limits of all Lower Courts.

114.     Plaintiffs are entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, reasonable attorney's fees and compensatory damages from Defendant Pay-O-Matic under Title VII.

**AS FOR THE THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION AND HARASSMENT UNDER STATE LAW**
**(Against all Defendants, including**
**Defendants Williams, Ramsumair and Ortiz)**

115.     Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

116.     This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

117.     At all relevant times, Defendant Pay-O-Matic was and is an employer within the meaning of the NYSHRL.

118.     At all relevant times, Defendants Williams, Ransumir and Ortiz were and are persons within the meaning of the NYSHRL.

119.     At all relevant times, Defendants Williams, Ransumir and Ortiz had and have the power to carry out personnel decisions or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiffs, sufficient to be held individually liable for all damages under the NYSHRL.

120.     At all relevant times, Plaintiffs were and are persons and employees within the meaning of the NYSHRL.

121.     At all relevant times, Plaintiff Ciera Washington was and is African-American, and was and is disabled, regarded as disabled and/or had a record of disability within the meaning of the NYSHRL.

122.     At all relevant times, Plaintiff Eleana Leiva was and is a dark-skinned American within the meaning of the NYSHRL.

20

123.    At all relevant times, Defendants were aware of Plaintiffs' race, color and disability status

124.    Defendants engaged in unlawful employment practices prohibited by the NYSHRL with behaviors including, but not limited to, repeatedly using or allowing others to use racist slurs and comments against Ms. Washington, denying Ms. Washington compensation and job promotions that she was entitled to receive, attempting to demote Ms. Washington without lawful justification, suspending Ms. Washington's employment without lawful justification, and attempting to unlawfully terminate Ms. Washington's employment. Upon information and belief, Defendants' misconduct was the result of discrimination, harassment and retaliation against Ms. Washington's race, color and actual and perceived disability status.

125.    Defendants also failed to pay Ciera Washington proper wages for the work she performed, including failing to provide her the hourly rate and pay raises that other non-African-American, non-disabled employees received, and failing to compensate her for the training of tellers and other additional managerial duties she performed.  Upon information and belief, Defendants' misconduct was the result of discrimination, harassment and retaliation against Ms. Washington's race, color and actual and perceived disability status.

126.    Defendants further engaged in unlawful employment practices prohibited by the NYSHRL with behaviors including, but not limited to, repeatedly using or allowing others to use racist slurs and comments against Ms. Leiva, denying Ms. Leiva work shifts, compensation and job promotions that she was entitled to receive, and unlawfully terminating Ms. Leiva's employment. Upon information and belief,

Defendants' misconduct was the result of discrimination, harassment and retaliation against Ms. Leiva's racial color.

127.     Upon information and belief, each and every Defendant contributed to the discrimination, harassment and retaliation, was aware of the discrimination, harassment and retaliation against Plaintiffs and did nothing to resolve it and/or was complicit in the misconduct.

128.     Defendants' unlawful employment practices negatively affected Plaintiffs' terms and conditions of employment, and created a hostile work environment.

129.     Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of Plaintiffs' race, color and actual and perceive disability status, as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

130.     Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

131.     Plaintiffs hereby make a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

132.     Plaintiffs' damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

133.     Plaintiffs are entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, and compensatory damages from Defendants under the NYSHRL.


**AS FOR THE FORTH CAUSE OF ACTION**
**FOR RETALIATION UNDER STATE LAW**
**(Against all Defendants, including**
**Defendants Williams, Ramsumair and Ortiz)**


134.     Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

135.     This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

136.     At all relevant times, Defendant Pay-O-Matic was and is an employer within the meaning of the NYSHRL.

137.     At all relevant times, Defendants Williams, Ransumir and Ortiz were and are persons within the meaning of the NYSHRL.

138.     At all relevant times, Defendants Williams, Ransumir and Ortiz had and have the power to carry out personnel decisions or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiffs, sufficient to be held individually liable for all damages under the NYSHRL.

139.     At all relevant times, Plaintiffs were and are persons and employees within the meaning of the NYSHRL.

140.     At all relevant times, Plaintiff Ciera Washington was and is African-American, and was disabled, regarded as disabled and/or had a record of disability within the meaning of the NYSHRL.

141.     At all relevant times, Plaintiff Eleana Leiva was and is a dark-skinned American within the meaning of the NYSHRL.

142.     At all relevant times, Defendants were aware of Plaintiffs' race, color and disability status

143.     Defendants engaged in unlawful employment practices prohibited by the NYSHRL by discriminating against and harassing Plaintiff Ciera Washington because of her race, color and actual and perceived disability status.

144.     Defendants further engaged in unlawful employment practices prohibited by the NYSHRL by discriminating against and harassing Plaintiff Eleana Leiva because of her color.

145.     Defendants' unlawful employment practices negatively affected Plaintiffs' terms and conditions of employment, and created a hostile work environment.

146.     Plaintiffs complained about Defendants' unlawful discrimination and harassment.

147.     Defendants retaliated against Plaintiffs' complaints by intensifying their discrimination and harassment, unlawfully disciplining Plaintiffs, and by terminating Plaintiff Eleana Leiva's employment.

148.     Upon information and belief, each and every Defendant contributed to the discrimination, harassment and retaliation, was aware of the discrimination, harassment

and retaliation against Plaintiffs and did nothing about it and/or was complicit in the misconduct.

149.      Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of Plaintiffs' race, color and actual and perceive disability status, as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

150.      Defendants' conduct, as alleged herein, also constitutes unlawful retaliation on the basis of Plaintiffs' race, color and actual and perceive disability status, as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

151.      Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

152.      Plaintiffs hereby make a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

153.      Plaintiffs' damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

154.     Plaintiffs are entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, and compensatory damages from Defendants under the NYSHRL.

## AS FOR THE FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION AND HARASSMENT UNDER CITY LAW
### (Against all Defendants, including
### Defendants Williams, Ramsumair and Ortiz)

155.     Plaintiffs hereby repeat and reallege each allegation contained above with the same force and effect as though fully set forth herein.

156.     This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

157.     At all relevant times herein, Defendant Pay-O-Matic was and is an employer and covered entity within the meaning of the NYCHRL.

158.     Upon information and belief, at all relevant times Defendants Williams, Ramsumair and Ortiz were and are persons within the meaning of the NYCHRL with ownership interests in Pay-O-Matic and/or the power to carry out personnel decisions or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiffs, sufficient to be deemed "employers" held individually liable for all damages under the NYCHRL.

159.     At all relevant times herein, Plaintiffs were and are persons within the meaning of the NYCHRL.

26

160.    At all relevant times herein, Defendants Williams, Ramsumair and Ortiz were and are employee supervisors and/or executives within the meaning of the NYCHRL.

161.    At all relevant times, Plaintiff Ciera Washington was and is African-American, and was disabled, regarded as disabled and/or had a record of disability within the meaning of the NYCHRL.

162.    At all relevant times, Plaintiff Eleana Leiva was and is a dark-skinned American within the meaning of the NYCHRL.

163.    At all relevant times, Defendants were aware of Plaintiffs' race, color and disability status

164.    Defendants engaged in unlawful employment practices prohibited by the NYCHRL with behaviors including, but not limited to, repeatedly using or allowing others to use racist slurs and comments against Ms. Washington, denying Ms. Washington compensation and job promotions that she was entitled to receive, attempting to demote Ms. Washington without lawful justification, suspending Ms. Washington's employment without lawful justification, and attempting to unlawfully terminate Ms. Washington's employment. Upon information and belief, Defendants' misconduct was the result of discrimination, harassment and retaliation against Ms. Washington's race, color and actual and perceived disability status.

165.    Defendants also failed to pay Ciera Washington proper wages for the work she performed, including failing to provide her the hourly rate and pay raises that other non-African-American, non-disabled employees received, and failing to compensate her for the training of tellers and other additional duties she performed.  Upon information

and belief, Defendants' misconduct was the result of discrimination, harassment and retaliation against Ms. Washington's race, color and actual and perceived disability status.

166.     Defendants further engaged in unlawful employment practices prohibited by the NYCHRL with behaviors including, but not limited to, repeatedly using or allowing others to use racist slurs and comments against Ms. Leiva, denying Ms. Leiva work shifts, compensation and job promotions that she was entitled to receive, and unlawfully terminating Ms. Leiva's employment. Upon information and belief, Defendants' misconduct was the result of discrimination, harassment and retaliation against Ms. Leiva's racial color.

167.     Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

168.     Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiffs' protected rights to be free from discrimination.

169.     Defendants are liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

170.     As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiffs have suffered and continue to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost front pay; (iv) lost benefits; (v) lost interest; (vi) lost pension and retirement earnings; and (vii) attorneys ' fees and costs.

171.    As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiffs have suffered and continue to suffer, among other items, impairment and damage to their good name and reputation, physical pain, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.

172.    Plaintiffs are entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

### AS FOR THE SIXTH CAUSE OF ACTION
### FOR RETALIATION UNDER CITY LAW
### (Against all Defendants, including
### Defendants Williams, Ramsumair and Ortiz)

173.    Plaintiffs hereby repeat and reallege each allegation contained above with the same force and effect as though fully set forth herein.

174.    This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

175.    At all relevant times herein, Defendant Pay-O-Matic was and is and employer and covered entity within the meaning of the NYCHRL.

176.    Upon information and belief, at all relevant times Defendants Williams, Ramsumair and Ortiz were and are persons within the meaning of the NYCHRL with ownership interests in North General and/or the power to carry out personnel decisions or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiffs, sufficient to be deemed "employers" held individually liable for all damages under the NYCHRL.

177.     At all relevant times herein, Plaintiffs were and are persons within the meaning of the NYCHRL.

178.     At all relevant times herein, Defendants Williams, Ramsumair and Ortiz were and are employee supervisors and/or executives within the meaning of the NYCHRL.

179.     At all relevant times, Plaintiff Ciera Washington was and is African-American, and was disabled, regarded as disabled and/or had a record of disability within the meaning of the NYCHRL.

180.     At all relevant times, Plaintiff Eleana Leiva was and is a dark-skinned American within the meaning of the NYCHRL.

181.     At all relevant times, Defendants were aware of Plaintiffs' race, color and disability status.

182.     Defendants individually and jointly engaged in unlawful misconduct including, but not limited to repeatedly using or allowing others to use racist slurs and comments against Ms. Washington, denying Ms. Washington compensation and job promotions that she was entitled to receive, attempting to demote Ms. Washington without lawful justification, suspending Ms. Washington's employment without lawful justification, and attempting to unlawfully terminate Ms. Washington's employment. Upon information and belief, Defendants' misconduct was the result of discrimination, harassment and retaliation against Ms. Washington's race, color and actual and perceived disability status.

183.     Defendants individually and jointly engaged in unlawful misconduct including, but not limited to, repeatedly using or allowing others to use racist slurs and

comments against Ms. Leiva, denying Ms. Leiva work shifts, compensation and job promotions that she was entitled to receive, and unlawfully terminating Ms. Leiva's employment. Upon information and belief, Defendants' misconduct was the result of discrimination, harassment and retaliation against Ms. Leiva's racial color.

184.    Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

185.    Defendants' conduct, as alleged herein, also constitutes unlawful retaliation against Plaintiffs for activity protected under the NYCHRL, and in violation of the NYCHRL.

186.    Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiffs' protected rights to be free from discrimination.

187.    Defendants are liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

188.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiffs have suffered and continue to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost front pay; (iv) lost benefits; (v) lost interest; (vi) lost pension and retirement earnings; and (vii) attorneys ' fees and costs.

189.    As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiffs have suffered and continue to suffer, among other items, impairment and damage to their good name and reputation, physical pain, emotional

distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.

190.     Plaintiffs are entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

**AS FOR THE SEVENTH CAUSE OF ACTION**
**FOR FAILURE TO PAY APPROPRIATE WAGES AND OVERTIME UNDER**
**THE FAIR LABOR STANDARDS ACT**
**(Against Defendant Pay-O-Matic, not against**
**Individual Defendants Williams, Ramsumair and Ortiz)**

191.     Plaintiffs hereby repeat and reallege each allegation contained above with the same force and effect as though fully set forth herein.

192.     This Count is brought under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and reference is made to the FLSA in its entirety.

193.     At all relevant times, Plaintiffs were and are employees within the meaning of the FLSA.

194.     At all relevant times, Plaintiffs employment involved being engaged in interstate commerce sufficient to warrant protection under the FLSA.

195.     At all relevant times, Defendant Pay-O-Matic was and is a covered employer within the meaning of the FLSA.

196.     Plaintiffs were not exempt from regular wage and overtime compensation under the FLSA.

197.     On several occasions, Plaintiff Ciera Washington worked over forty hours in a workweek, but was not paid time and a half (i.e., overtime compensation) by Pay-O-Matic for each hour worked over 40 per week.

198.     Upon information and belief, Defendants were aware that Ms. Washington had worked over forty hours in a workweek several times, but they refused to pay her overtime compensation in willful violation of the FLSA.

199.     Upon information and belief, Defendants also failed to compensate Ms. Leiva for work performed and for paid time off ("PTO") days.

200.     Upon information and belief, Pay-O-Matic also failed to keep proper and accurate time sheets of Plaintiffs' hours worked in a willful attempt to circumvent the overtime and wage laws.

201.     Plaintiff Ciera Washington is entitled to payment of unpaid wages and overtime, back pay, prejudgment interest, reasonable attorneys' fees, and liquidated damages under the FLSA.

202.     Plaintiff Eleana Leiva is entitled to payment of unpaid wages, back pay, prejudgment interest, reasonable attorneys' fees, and liquidated damages under the FLSA.

## AS FOR THE EIGHTH CAUSE OF ACTION
## FOR FAILURE TO PAY APPROPRIATE WAGES AND OVERTIME UNDER THE NEW YORK LABOR LAW
## (Against Defendant Pay-O-Matic,
## not against individual Defendants Williams, Ramsumair and Ortiz)

203.     Plaintiffs hereby repeat and reallege each allegation contained above with the same force and effect as though fully set forth herein.

204.     This Count is brought under the New York Labor Law, N.Y. Lab Law § 650 et seq. ("NY Lab Law"), including § 663, and reference is made to the NY Lab Law in its entirety.

205.     At all relevant times, Plaintiffs were employees under the NY Lab Law.

206.     At all relevant times, Defendant Pay-O-Matic was an employer within the meaning of the NY Lab Law.

207.     Defendants failed to pay Plaintiff Ciera Washington proper wages for the work she performed, including failing to provide her the hourly rate and pay raises that other non-African-American, non-disabled employees received, and failing to compensate her for the training of tellers and other additional duties she performed.

208.     On several occasions, Plaintiff Ciera Washington also worked over forty hours in a workweek, but was not paid time and a half (i.e., overtime compensation) by Pay-O-Matic.

209.     The administrative regulations promulgated under Article 19 of the NY Lab Law require employers to pay their employees for "overtime at a wage rate of one and one-half times the employee's regular rate." 12 N.Y. Comp. Codes R. & Regs. § 142-2.2.

210.     Upon information and belief, Defendants were aware that Ms. Washington had worked over forty hours in a workweek several times, but they refused to pay her overtime compensation in willful violation of the NY Lab Law and 12 N.Y. Comp. Codes R. & Regs. § 142-2.2.

211.     Upon information and belief, Defendants also failed to compensate Ms. Leiva for work performed and for paid time off ("PTO") days.

212.     Upon information and belief, Pay-O-Matic also failed to keep proper and accurate time sheets of Plaintiffs' hours worked in a willful attempt to circumvent the overtime and wage laws.

213.     On several occasions, Defendant Pay-O-Matic also failed to provide Ms. Washington with proper meals and rest periods in violation of the NY Lab Law. N.Y. Lab Law § 162.

214.     Plaintiff Ciera Washington is entitled to compensation for all underpayments made by Pay-O-Matic, together with costs, all reasonable attorneys' fees, and prejudgment interest under the NY Lab Law.

215.     Plaintiff Eleana Leiva is entitled to payment of unpaid wages, back pay, reasonable attorneys' fees and costs, and prejudgment interest under the NY Lab Law.

216.     As Defendants' misconduct was also in willful disregard for the NY Lab Law, Plaintiffs are also entitled to an additional amount as liquidated damages equal to one hundred percent (100%) of the total of such underpayments found to be due under the NY Lab Law, including N.Y. Lab Law § 663.

### AS FOR THE NINTH CAUSE OF ACTION
### FOR RETALIATION UNDER
### THE NEW YORK LABOR LAW
### (Against Defendant Pay-O-Matic,
### not against individual Defendants Williams, Ramsumair and Ortiz)

217.     Plaintiffs hereby repeat and reallege each allegation contained above with the same force and effect as though fully set forth herein.

218.     This Count is brought under the New York Labor Law, N.Y. Lab Law §§ 215, <u>et seq</u>. and 650, <u>et seq</u>. ("NY Lab Law"), including § 215(a)(iii), and reference is made to the NY Lab Law in its entirety.

219.     Section 215 of the NY Lab Law states, in relevant part, that an employer shall not:

> discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . (i) because such employee has made a complaint to his or her employer . . . (ii) because such employer or person believes that such employee has made a complaint to his or her employer . . . (iii) because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter . . .
> N.Y. Lab. Law § 215(a)(iii).

220.     Plaintiffs engaged in protected activity, as Plaintiffs complained several times against Defendants' failure to promote, and failure to pay proper wages, benefits and overtime compensation.  Plaintiffs were also about to institute and had instituted legal proceedings under provisions of the FLSA and the NY Lab Law, including under § 663, <u>et seq</u>. of the NY Lab Law.

221.     Defendants were aware of Plaintiffs' complaints and that Plaintiffs had instituted and/or were about to institute legal proceedings.

222.     Defendants did nothing to resolve the situation.  Instead, Defendants retaliated against Plaintiffs' lawful complaints and impending legal action by intensifying their harassment against them, including, but not limited to, further denying compensation, benefits and job promotions, attempting to demote Ms. Washington without lawful justification, suspending Ms. Washington's employment without lawful justification, attempting to unlawfully terminate Ms. Washington's employment, and unlawfully terminating Ms. Leiva's employment.

223.     A causal connection exists between Plaintiffs' protected activity and Defendants' adverse employment actions.

224.     At all relevant times, Plaintiffs were employees covered under the NY Lab Law.

225.     At all relevant times, Defendant Pay-O-Matic was an employer within the meaning of the NY Lab Law.

226.     Plaintiffs are entitled to compensation for all underpayments made by Pay-O-Matic and lost benefits, together with liquidated damages, costs, all reasonable attorneys' fees, and prejudgment interest under the NY Lab Law § 215.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.  Declaring that the Defendants engaged in unlawful employment practice prohibited by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, the New York City Human Rights Law, The Fair Labor Standards Act, and the New York Labor Law; and that the Defendants discriminated against, harassed and retaliated against Plaintiffs on the basis of race, color, and actual and perceived disability;

B.  Declaring that the Defendants intentionally caused Plaintiffs to become emotionally distressed;

C.  Awarding damages to Plaintiffs, retroactive to the date of their hire and to the date of Ms. Leiva's employment termination, for all lost wages and benefits, past and future,

back pay and front pay, and liquidated damages, resulting from Defendants' unlawful discrimination, harassment, retaliation, failure to provide proper compensation, and termination of employment and to otherwise make Plaintiffs whole for any losses suffered as a result of such unlawful employment practices;

D.  Awarding Plaintiffs compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount in excess of the jurisdiction of all lower courts;

E.  Awarding Plaintiffs punitive damages under Title VII and the NYCHRL;

F.  Awarding Plaintiffs attorneys' fees, costs, and expenses incurred in the prosecution of the action under Title VII, the NYCHRL;

G.  Awarding Plaintiffs attorneys' fees, costs, and expenses incurred in the prosecution of the action under the FLSA, and the NY Labor Law;

H.  Awarding Plaintiffs back pay, overtime compensation, prejudgment interest and liquidated damages under the FLSA;

I.  Awarding Plaintiffs back pay, overtime compensation, and liquidated damages under the NY Labor Law;

J.  Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated:  New York, New York
           November 30, 2011

LAW OFFICE OF LAURIE E. MORRISON
*Attorney for Plaintiffs*

By:

Laurie E. Morrison
30 Broad Street, 35th Floor
New York, New York 10004
(212) 721-4051 (office)
(212) 785-7835 (office)
(646) 651-4821 (fax)
morrison@lemorrisonlaw.com